IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____ x
                                :
LESLIE WILSON,                  :
                                :
                Plaintiff,      :
                                :
        v.                      :     NO. 02-CV-4662
                                :
PPL ELECTRIC UTILITIES CORPORATION, :
                                :
                Defendant.      :
                                :
_____ x
```

## DECLARATION OF ROBERT GENECZKO

Robert Geneczko declares pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am presently employed by PPL as Vice President-Customer Services. I have been employed by PPL since July 1974 and have been in my current position since September 2, 2002. From 1998 through August 27, 2001, I was the Vice President-Power Delivery, with overall responsibility for the department in which plaintiff Leslie Wilson worked. I make this declaration in support of Defendant's motion for summary judgment.

2. In May 2000, I received a report from Allen Cassaday, the Manager of the Lehigh Region, that Ronald Pezon, a supervisor who reported to Cassaday, suspected that one of his subordinates, Leslie Wilson, was engaging in personal business on Company time rather than performing his job duties. Cassaday informed me of Pezon's reasons for suspecting that Wilson

was engaged in improper behavior, and requested approval for the Security Services Department to conduct an investigation, which I granted.

3. During the investigation of Wilson, I periodically received status reports regarding the findings of the investigators. In July 2000, I was informed that surveillance caught Wilson engaging in substantial non-PPL business on company time during the previous month, and that he submitted a fraudulent expense report seeking reimbursement for miles that he did not drive on PPL business. Doug Rehrer, Manager-Health & Safety, who headed the investigation, informed me that there was a number of additional tasks that the investigators needed to complete, including interviewing Wilson about his conduct and completing their review of his cell phone records, before the investigation would be concluded.

4. In August 2000, I was informed by Janice Thomas, a human resources representative responsible for my area, that Wilson did not report to work the day he was to be interviewed by PPL investigators (August 14), and he refused to provide a medical note to substantiate his claim of illness on that day. (Thomas had advised Ron Pezon that Wilson should be asked for a medical note to substantiate his claim of illness in light of the Company's investigation.) Because the investigation had already raised for us extremely serious questions with respect to Wilson's integrity, I authorized Thomas to suspend Wilson for insubordination, pending the completion of the investigation, if he failed to substantiate his claim that he was at the doctor on August 14.

5. On or about September 7, 2000, I received from Doug Rehrer, the final report summarizing the findings of the investigation into Wilson's activities. Among other things, the report concluded that Wilson had engaged in substantial personal business on PPL time (including engaging in personal errands and conducting what appeared to be business on

behalf of his church); that he submitted an expense report for June 2000 seeking reimbursement for travel to meetings that he did not attend on the days he was videotaped by investigators; and that he charged over $1,000 in personal telephone calls on his Company cellular phone without reimbursing the Company.

6. The conduct that Wilson engaged in that was described in the investigation report was egregious, and constituted extremely serious violations of PPL policies. Even if Wilson had not attended training in the PPL Standards of Conduct & Integrity (which he did), all employees know (or should know) that theft of time, the submission of a false expense report, and charging thousands of dollars worth of personal calls on a Company phone are integrity violations that are not tolerated by PPL. Indeed, in my nearly thirty years of employment with the Company, I am not aware of any PPL employee who was found to have engaged in conduct comparable to that of Wilson (*e.g.*, submitting a false expense report, engaging in substantial personal business during working hours) who did not have his or her employment terminated.

7. Because of Wilson's extremely serious workplace infractions, I made the decision to terminate Wilson's employment. Wilson's race, age or the fact that he had filed a lawsuit against the Company in the 1980s played no role whatsoever in the decision to conduct an investigation into his activities or terminate his employment in 2000. (I, Allen Cassaday, and Ron Pezon were not involved in Wilson's prior lawsuit which occurred when he worked in a different department many years ago, and I have no knowledge of the facts and circumstances concerning that prior action.) To the contrary, Wilson was treated no differently than other PPL employees whose supervisors suspected that they were engaging in non-PPL business during working hours. In fact, based on the facts presented to me, I believe that Wilson's supervisors

demonstrated extraordinary patience in waiting until May 2000 to request an investigation (after two years of futile attempt to rectify his performance) when Wilson's performance as early as 1998 indicated that he was focusing on something other than his job duties during the work day.

8. Wilson's claim that we treated him differently from other PPL employees cannot be squared with the fact that in June 2000 I authorized the investigation by Security Services of James Stouch, a Caucasian employee holding the same position as Wilson but in the Lancaster Region. Stouch, like Wilson, was investigated because his supervisors suspected that he was engaging in personal business on Company time. Security Services conducted an investigation of Stouch in the summer of 2000, which included surveillance and a review of his phone records.

9. I received a copy of the report summarizing the findings of the Stouch investigation on November 3, 2000, which confirmed that Stouch had engaged in personal activities during working hours, but did not definitively conclude that Stouch falsified his expense reports. Although Stouch's conduct was not as egregious as Wilson (who submitted a false expense report and grossly abused his Company cell phone), Stouch's theft of time constituted a serious breach of PPL's policies, and I made the decision to terminate his employment. Stouch submitted a letter of resignation after being informed that his employment would be terminated.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: August 13, 2003

_Robert Geneczko_
Robert Geneczko