# **ARGUMENT**

I. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE OF EMPLOYMENT DISCRIMINATION AND HARASSMENT (COUNTS I, IV, V AND VI).

As Defendant correctly notes, see Memorandum of Law in Support of Defendant's Motion For Summary Judgment [hereinafter "Defendant's Memorandum"] at pp. 20-21, to establish a *prima facie* case of employment discrimination under Title VII, Section 1981 or the Age Discrimination in Employment Act ("ADEA"), a plaintiff must show the following:

(1) that he is a member of a protected class, and
(2) is qualified for the position but
(3) was either not hired or fired from that position
(4) *under circumstances that give rise to an inference of unlawful discrimination* such as might occur when the position is ultimately filled by a person not of the protected class.

Jones v. Sch. Dist. of Philadelphia, 19 F.Supp.2d 414, 418 (E.D.Pa. 1998) (emphasis supplied).

Here, it is uncontroverted that Mr. Wilson is a member of *two* protected classes, in that he is an African-American over the age of forty. See Reeves v. Sanderson Plumbing Prods., Inc. 530 U.S. 133, 142 (2000) (elements of *prima facie* age discrimination); Jones, supra, 19 F.Supp.2d at 418 (race discrimination). Nor is there any dispute as to Mr. Wilson's qualifications for the position. See Defendant's Memorandum at p. 22.

Rather, Defendant claims that Mr. Wilson has failed to show that he was fired "under circumstances that give rise to an inference of unlawful discrimination," Jones, supra, 19 F.Supp.2d at 418, because he has put forth no evidence that "either Caucasian or younger employees . . . were treated more favorably than him." Defendant's Memorandum at p. 22. Defendant is wrong.

First, Mr. Wilson testified that he was the only black in his department at PPL. Deposition of Leslie Wilson [hereinafter "Wilson Deposition"] at pp. 41, 306. Out of that group, Mr. Wilson was the only employee required to keep and submit a weekly work log to his supervisor, Ronald Pezon. Id. at pp. 111, 306. Mr. Wilson was the only employee of that group to be subjected to surveillance by PPL investigators. See id. at pp. 183-84, 299-300, 306. Moreover, despite the fact that the regular practice at PPL was not to require a note from a doctor confirming an employee's doctor visit the first time an employee took a half-day sick leave, id. at pp. 294-95, 299-300, Mr. Wilson was suspended for failing to so provide a note. Id. at pp. 301-02.

In addition, Mr. Wilson has proffered evidence that other employees had been upbraided for the same behavior that resulted in Mr. Wilson's termination. See, e.g., id. at pp. 245, 269-74 (cell phone usage); id. at pp. 85-87 (falsified customer satisfaction surveys). Compare Reddit v. Mississippi Extended Care Centers, Inc., 718 F.2d 1381, 1385-86 (5th Cir. 1983) (dismissal of black female plaintiff's discrimination case reversed where black female plaintiff presented evidence of pretext by showing that "white

1

employees who engaged in conduct constituting cause for dismissal . . . only received warnings or disciplinary actions: and "several blacks were terminated after their first infractions of the rules without receiving prior warnings").

Moreover, Mr. Wilson testified that his co-workers made racist remarks in a small-office atmosphere in which these remarks were, arguably, tolerated by the supervisor. See id. at pp. 41-45; 327.[1] Mr. Wilson also testified that Ronald Pezon told Mr. Wilson to begin sending letters to his clients, "verifying what we were going to do and hav[ing] people sign off on the letters," because, Pezon said, "As you get older, you forget what you're supposed to do. Maybe you need to send a letter." Id. at pp. 311-12. Other, younger employees were not required to memorialize their business dealings.

At a minimum, then, Mr. Wilson has put forth sufficient evidence to support a *prima facie* case of age and race discrimination, not to mention harassment. See Reeves, supra, 530 U.S. at 142; Jones, supra, 19 F.Supp.2d at 419. Defendant's proffered evidence that Mr. Wilson was fired for conducting personal business on company time, submitting "false expense report[s]," and failing to reimburse PPL for personal calls he made on the cell phone they had installed in his personal car, see Defendant's

---

[1] Mr. Wilson testified that Dave Anderson sat right beside Mr. Wilson, and Bob Stano sat right beside Anderson. Wilson Deposition at p. 131. In addition, David Ling, who was supervisor to Ronald Pezon, had an office "right outside" of where Pezon's team worked, and Mr. Wilson's co-workers regularly went into Mr. Ling's office to "laugh and joke with" Ling. Id. at p. 327. In this close atmosphere, a jury might reasonably presume that Mr. Wilson's supervisors heard – and did nothing about – the racist remarks being made to Mr. Wilson.

Memorandum at p. 1, does not go to Mr. Wilson's *prima facie* case; rather, Defendant's proffer goes only to its allegedly legitimate, non-discriminatory reasons for taking adverse employment actions against Mr. Wilson, as discussed below.

## II. SUMMARY JUDGMENT IS INAPPROPRIATE WHERE THE PLAINTIFF HAS PRODUCED EVIDENCE THAT COULD REASONABLY SUPPORT THE INFERENCE THAT DEFENDANT'S ALLEGED NON-DISCRIMINATORY REASONS FOR FIRING PLAINTIFF WERE MERE PRETEXT (COUNTS I, IV, V AND VI)

To defeat summary judgment in an employment discrimination case, an employee need only produce

> evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge [which] reasonably *could* support an inference that the employer did not act for nondiscriminatory reasons. . . . if the record contains evidence supportive of a rational inference that the employer's reasons are unworthy of credence, summary judgment for the employer is improper.

Turner v. Schering-Plough Corp., 901 F.2d 335, 342 (3rd Cir. 1990) (internal citations omitted). See also Reeves, supra, 530 U.S. at 147-48, 151-53 (jury may rely upon evidence establishing plaintiff's *prima facie* age discrimination case, combined with disbelief of the employer's alleged nondiscriminatory reasons for firing plaintiff, to find that employer's purported reason for employment decision is pretextual). Put another way, to survive summary judgment, a plaintiff

> must point to some evidence, be it direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's

3

articulated legitimate reasons or, (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Jones, supra, 19 F.Supp.2d at 418 (internal citations omitted). Because Mr. Wilson has, in fact, put forth such evidence, Defendant's motion for summary judgment must fail. Id. at 418-19.

      A.    Mr. Wilson Has Refuted Defendant's Evidence That He Was Fired Because He "Flagrantly and Egregiously Violated" PPL Policies And Practices.

"Summary judgment is an exercise of issue finding, not issue determination." National Union Fire Ins. Co. v. Airborne Freight Corp., 2000 Dist. LEXIS 12773 (S.D.N.Y. 2000). See also Riffle v. Sports Auth., Inc., 1999 U.S. Dist. LEXIS 14588, *1, *4, 80 Fair Empl. Prac. Cas. (BNA) 897, __ (S.D.Md. 1999) (same); Eckel Indus. v. Primary Bank, 26 F. Supp. 2d 313, 315 (D.C.N.H. 1998). Thus, when deciding Defendant's motion for summary judgment, this Court should "rea[d] the evidence in the light most favorable to plaintiff" and "afford him the benefit of the doubt." Jones, supra, 19 F.Supp.2d at 419.

Mr. Wilson has rebutted Defendant's evidence that he submitted fraudulent expense reports by describing his regular practice of conforming the overall *monthly* amount he was claiming for reimbursement from PPL with his actual travel logs, rather than continually reconstructing his *weekly projected* schedule each time a client meeting was rescheduled. See Wilson Deposition at pp. 169-182. As Mr. Wilson testified, his

method of calculating his total reimbursable mileage resulted in no undeserved reimbursements from PPL and conformed with his department's practice. Id. at p. 177. A rational jury may easily conclude that Mr. Wilson's was the more sensible, time-efficient method of tracking mileage – with his daily log rather than continually altering his projected weekly schedule – and Mr. Wilson's method was respectful of PPL's 'bottom line.' Thus he was guilty of no infraction sufficient to warrant his discharge.

Similarly, Mr. Wilson testified that, as a "virtual employee," he was allowed to work from his home. Id. at pp. 189, 200-01. Therefore, on some occasions when he was observed going into and remaining in his home for periods of time, he was working from home. Id. On other occasions, the timing of Mr. Wilson's visits home suggest that he was merely stopping off for lunch. Id. In addition, other "personal business" side-trips which Mr. Wilson was accused of conducting on company time were of the brief and reasonable sort of activity that a jury could find that many employees make without suffering the dire consequence of termination – a trip to the bank ATM, id. at pp. 195-97, or ducking into a Burger King to use the bathroom on the way to the next business meeting. Id. at p. 198. Consequently, a rational jury might well conclude that these "thefts of time" alleged by PPL are nothing more than hypervigilance directed at Mr. Wilson for the purpose of firing him for illegitimate reasons.

So, too, a rational jury might conclude that Mr. Wilson's failure to reimburse PPL for his personal cell phone usage was nothing more than a mis-communication that could

readily have been cleared up without firing Mr. Wilson. After all, Mr. Wilson testified that when he became aware that it was his responsibility to pay for personal phone calls made from a company line installed in his home, he paid the fees – and had the line taken out of his home so as not to incur any additional charges. Id. at pp. 244-45, 276. As Mr. Wilson also testified, his supervisor, Ronald Pezon, noted at a staff meeting that the cell phone costs for Pezon's *entire department* had gone up, but singled no one out and asked no one for reimbursement for personal calls. Id. at pp. 245, 269-74. Consequently, a rational jury might believe that it was PPL's practice *not* to expect reimbursement from members of this department despite its written policy, *unless and until* such costs had increased beyond a point the company was willing to subsidize.

Thus, Mr. Wilson has "introduce[d] evidence that casts doubt on the employer's contention that there was a legitimate business justification for letting him go." Healy v. New York Life Ins. Co., 860 F.2d 1209, 1220 (3rd Cir. 1988). Where, as here, the plaintiff has rebutted the employer's "asserted reasons for his discharge" by "disput[ing] the significance of the problems raised" by the employer and "testif[ying] to specific examples of [the employer's] errant or misplaced criticisms," summary judgment dismissal of plaintiff's complaint will not lie because "[s]uch evidence amounts to more than his subjective opinion of his performance." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 331(3rd Cir. 1995). Contrast Turner, supra, 901 F.2d at 339 (summary dismissal of age discrimination count upheld since "nowhere in the record does [plaintiff]

6

dispute the specific allegations of performance deficiencies and operational problems . . . identified in his deposition testimony and in memos related to [his] performance"). Where, as here, "the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reason, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination." Brewer, supra, 72 F.3d at 331 (internal citation omitted). See also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination"). Nevertheless, Mr. Wilson *has* proffered such additional evidence.

> B.  Mr. Wilson Has Produced Direct Evidence To Support An Inference That He Was Terminated Because Of His Age And His Race.

In essence, Mr. Wilson has "argue[d] that he was treated differently than white [and younger employees] in that while his actions resulted in discipline or threats of discipline, similar action was not taken against other[s]." Jones, supra, 19 F.Supp.2d at 419. To establish more fully his assertion that the *reasons* for this harassment and disparate treatment were race and age discrimination, Mr. Wilson testified to the use of racial slurs to refer to him in his workplace, in close proximity to his supervisors; in addition, he testified that his supervisor told him he was being asked to shoulder a new "documenting" responsibility (sending follow-up letters to customers to confirm his

7

interactions with them) *because* of his age and presumed memory loss. See Wilson Deposition at pp. 41-45, 311-12, 327. Mr. Wilson also testified that he was the only one in his department expected to review his schedule with Mr. Pezon and verify that he followed that schedule on a weekly basis. See id. at 111. Mr. Wilson was also expected to proffer a doctor's note to excuse a half-day sick-leave absence, although the regular practice of PPL supervisors was to request such a note only after an employee had taken five sick days. Id. at pp. 295-96.[2]

In essence, Mr. Wilson was subjected to a higher level of scrutiny and criticism than his co-workers, despite the fact that the *entire* department – and not just Mr. Wilson – was warned about excessive cell phone usage, id. at pp. 245-46, 272-73, as well as excessive mileage, id. at pp. 142-46, and inaccurate customer satisfaction surveys, see id. at pp. 85-87. Moreover, other co-workers also used estimates to fill out their mileage logs, see id. at pp. 339-40, and engaged in personal business on company time, see id. at p. 338.[3] Nevertheless, at the time these additional requirements were placed upon Mr.

---

[2] This was Mr. Wilson's practice -- which he believed to be in accord with PPL's policy – when he was a supervisor. See Wilson Deposition at p. 296.

[3] It should also be noted that, at the time Mr. Wilson requested a company car, his territory covered more than 100 miles from end to end. Wilson Deposition at p. 155. Although Dave Anderson and Bob Stano did not have company cars, Dave Weidman, whose territory extended into the Pocono region, did. Id. at p. 154. As Mr. Wilson testified, having a company car would have exempted him from PPL's new 750-mile monthly mileage limitation, thereby enabling him to better service the customers in his territory without restriction. See id. at pp. 143-61.

Wilson, he had more than a 90% completion rate on his jobs, id. at p. 109 – higher than the goal his supervisor had set for 1998, id. at p. 106.

In so testifying, Mr. Wilson has not only met his burden of establishing a *prima facie* case of discriminatory harassment and firing, he has also met his burden of providing evidence sufficient for a rational jury to reject PPL's asserted non-discriminatory reasons for firing Mr. Wilson as mere pretext for race and age discrimination.  See Brewer, supra, 72 F.3d at 331.  Indeed, such evidence is particularly compelling when, as here, a supervisor asserts an aged-biased reason for increasing Plaintiff's job responsibilities beyond those of his white (and, in some cases, younger) co-workers, thereby establishing "a causal link" between the discriminatory statement and the adverse employment action.  See id. at 333.

### III. SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF RETALIATION IS INAPPROPRIATE (COUNT III).

It is undisputed that in 1988 Mr. Wilson filed a lawsuit alleging that a PPL supervisor discriminated against him on the basis of his race, thereby engaging in an activity protected under Title VII.  See Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3rd Cir. 1995).  Moreover, Mr. Wilson has asserted that he has suffered adverse employment actions, including  unfairly negative performance evaluations, as well as his suspension and ultimate termination.

Defendant, however, asserts that there is no causal connection between the lawsuit

Mr. Wilson filed in 1988 and his termination in 2000 and, therefore, summary judgment for PPL is appropriate. Defendant's Memorandum at p. 42. However, in so arguing, Defendant ignores the assertions Mr. Wilson made in his deposition – assertions which present triable issues of fact and are sufficient to build a circumstantial case of discriminatory retaliation. Cf. Brewer, supra, 72 F.3d at 333-34.

Contrary to Defendant's assertion, see Defendant's Memorandum at p. 43 and p. 43 n. 13, Plaintiff *has* alleged a continuous course of discriminatory conduct extending from his 1988 lawsuit to his termination in 2000, by testifying that his performance evaluations after the lawsuit were persistently, and unfairly, negative. See Wilson Deposition at p. 331. See also Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173 (3rd Cir. 1997) (passage of time between protected activity and adverse employment decisions, while probative, is not dispositive of causation issue in retaliation claim).

Tellingly, the Brewer court noted that evidence of a "corporate culture" of discrimination is "relevant evidence of discrimination," *regardless* of whether the decision maker has actual knowledge of the CEO's original statement cultivating that "culture of discrimination". Brewer, supra, 72 F.3d at 333-34. So, too, this Court should hold that Plaintiff's evidence of a continuous course of discriminatory conduct toward him is sufficient to prove the existence of a discriminatory "managerial policy" toward Plaintiff – a policy his superiors followed when they suspended, then fired him. See Brewer, supra, 72 F.3d at 333-34.

IV. OTHER CLAIMS (COUNTS II AND VII)

In response to Defendant's Memorandum, Points IV and V (disparate impact and intentional infliction of emotional distress), Mr. Wilson relies upon the assertions in his pleadings, as well as his deposition testimony, as support for his position that Plaintiff's evidence is sufficient to warrant a trial.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Leslie Wilson respectfully requests that this Court deny Defendant's motion for summary judgment in its entirety.

Respectfully submitted,

_____
GLENNIS L. CLARK, ESQUIRE
I. D. No. 36682
Attorney for Plaintiff
LAW OFFICE OF GLENNIS L. CLARK
532 Walnut Street
Allentown, PA 1810
(610) 433-6624

## CERTIFICATE OF SERVICE

I, Glennis L. Clark, Esquire, hereby certify that I have caused to be served a true and correct copy of Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, via first class mail, postage prepaid on the date stated below to the offices of:

>   Daniel R. Halem, Esquire
>   Proskauer Rose, LLP
>   1585 Broadway
>   New York, NY 10036

Dated: _____        _____
                              GLENNIS L. CLARK
                              I. D. No. 36682
                              Attorney for Plaintiff
                              LAW OFFICE OF GLENNIS L. CLARK
                              532 Walnut Street
                              Allentown, PA 18101
                              610-433-6624